**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

ROD STERLING HOLMES, # 333682,

        Petitioner,

v.                                                  Case Number: 09-CV-12823
                                                       Honorable Nancy G. Edmunds

CARMEN D. PALMER,

        Respondent.
_____/

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND
DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY AND LEAVE TO
PROCEED ON APPEAL *IN FORMA PAUPERIS***

**I. INTRODUCTION**

This is a habeas case filed under 28 U.S.C. § 2254. Petitioner Rod Sterling Holmes, currently incarcerated at the Michigan Reformatory in Ionia, Michigan, was convicted by a Wayne County, Michigan, circuit court jury of (1) interfering with a police investigation, MICH. COMP. LAWS § 750.483a(4)(b), (2) carrying a concealed weapon (CCW), MICH. COMP. LAWS § 750.227, (3) three counts of assault with intent to murder, MICH. COMP. LAWS § 750.83, (4) three counts of felon in possession of a firearm, MICH. COMP. LAWS § 750.227f, and (5) three counts of possession of a firearm during the commission of a felony, MICH. COMP. LAWS § 750.227b. He was sentenced to (1) two to ten years in prison for the interfering-with-a-police-investigation conviction, (2) one to five years in prison for the CCW conviction, (3) thirty to sixty years in prison for each of the assault convictions, and (4) one to five years in prison for each of the felon-in-possession convictions to be served consecutive to concurrent sentences of two years in prison for each of the felony-firearm convictions. In his *pro se* pleadings, Holmes alleges: (1) ineffective assistance of trial

counsel, (2) insufficient evidence to show that he assaulted a police officer, and (3) insufficient evidence to support his two convictions for felony firearm. For the reasons stated below, the Court will deny the petition and will also decline to issue a certificate of appealability and leave to proceed on appeal *in forma pauperis*.

## II. BACKGROUND

The Michigan Court of Appeals summarized the facts of the case. The recitation of those facts are entitled to a presumption of correctness under 28 U.S.C. § 2254(e)(1). They are as follows:

> Defendant's convictions arise out of a dispute between Curtis Bell and him that occurred on August 31, 2006. Bell was at his home in Detroit with Gary Jefferson and Brenda Patterson. Bell was sitting on his porch that evening when defendant pulled up and called Bell over to his car. Defendant got out of the car and punched Bell in the jaw, claiming that Bell "had some guys" steal defendant's van. Defendant and "George," who had been inside the car with defendant, then went into Bell's home and instigated a physical altercation with Jefferson. Patterson saw that George was carrying a gun and immediately left the house. She heard a gunshot as she was exiting through the back door. Jefferson was shot in the shoulder.
>
> Bell called the police. As he was talking to police officers in front of his house, he heard rustling in the bushes and heard defendant say "Hey, Curt." He then heard two gunshots, and he and the officers took cover. Shortly thereafter, the police observed defendant quickly leave his nearby home and speed away in his vehicle. Officers stopped the car and arrested him. The police recovered a semi-automatic handgun in the trunk of the car. They also recovered an assault rifle from the attic and a .44-caliber revolver from under a seat cushion during a search of defendant's home. Testing confirmed that the rifle was the weapon that was fired toward Bell and the officers outside Bell's home.

*People v. Holmes*, No. 276591, 2008 WL 5056691, at *1 (Mich.Ct.App. Oct. 14, 2008).

Following his sentencing, Holmes filed a claim of appeal in the Michigan Court of Appeals, raising the same claims as raised in his habeas petition, plus a sentencing-error claim. The Court of Appeals affirmed Holmes's convictions, but remanded the case to the

2

trial court for the limited purpose of amending the judgment of sentence to reflect that his sentences for his felony-firearm and CCW convictions run concurrently. *Holmes*, No. 276591, 2008 WL 5056691, at *1.

Subsequently, Holmes filed an application for leave to appeal the Court of Appeals's decision in the Michigan Supreme Court, raising the same claims and adding the following: (1) appellate counsel was ineffective for not filing an evidentiary hearing. On April 28, 2009, the Michigan Supreme Court denied Holmes's application. *People v. Holmes*, 483 Mich. 977, 764 N.W.2d 248 (2009). It does not appear that Holmes filed a writ of certiorari in the United States Supreme Court or a post-conviction motion in the state court. Rather, on July 17, 2009, he filed this habeas petition.

### III.  STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs this Court's habeas corpus review of state-court decisions. Specifically, 28 U.S.C. § 2254(d) states in pertinent part:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the State court proceedings.

Under (d)(1), a federal court may grant a writ of habeas corpus under two different clauses, both of which provide two bases for relief. Under the "contrary to" clause, a

3

federal court may grant habeas relief if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has decided on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). The words "contrary to" should be construed to mean "diametrically different, opposite in character or nature, or mutually opposed." *Id.*

Under the "unreasonable application" clause, a federal court may grant habeas relief if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts. *Williams*, 529 U.S. at 407-08. Relief is also available under this clause if the state court decision either unreasonably extends or unreasonably refuses to extend a legal principle from Supreme Court precedent to a new context. *Id.*, at 407; *Arnett v. Jackson*, 393 F.3d 681, 686 (6th Cir. 2005). The proper inquiry for the "unreasonable application" analysis is whether the state court decision was "objectively unreasonable" and not simply erroneous or incorrect. *Williams*, 529 U.S. at 407; *Lordi v. Ishee*, 384 F.3d 189, 195 (6th Cir. 2004).

In analyzing whether a state court decision is "contrary to" or an "unreasonable application" of clearly established Supreme Court precedent, a federal court may only look to the holdings, as opposed to dicta, of the Supreme Court's decisions as of the time of the relevant state-court decision. *Lockyer v. Andrade*, 538 U.S. 63, 71 (2003); *Williams*, 529 U.S. at 412.

## IV.  DISCUSSION

### A.  Claim I–Ineffective Assistance of Counsel

In his first claim, Holmes alleges that his trial counsel was ineffective for failing to seek suppression of the guns discovered in his house during a warrantless police search. He claims that his grandmother, who allowed the officers into the home, was incompetent to consent to the search.

In order to establish ineffective assistance of counsel, a petitioner must show that his or her attorney's performance was deficient and that the deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The Supreme Court's decision in *Strickland* "qualifies as 'clearly established Federal law'" for purposes of evaluating ineffective-assistance-of-counsel claims. *Williams*, 529 U.S. at 391.

An attorney's performance is deficient if counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment" and if "counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687-88. The prejudice prong of *Strickland* requires Holmes to demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. "Unless a defendant makes both showings [deficient performance and resulting prejudice], it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." *Id.* at 687.

Judicial scrutiny of a defense attorney's conduct is "highly deferential-and doubly

deferential when it is conducted through the lens of federal habeas." *Yarborough v. Gentry*, 540 U.S. 1, 6 (2003). A habeas petitioner must establish a violation of *Strickland's* two-pronged test and show that the state applied *Strickland* to the facts in an objectively unreasonable manner. *Bell v. Cone*, 535 U.S. 685, 698-99 (2002). "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Wilson v. Parker*, 515 F.3d 682, 698 (6th Cir. 2008) (citing *Strickland*, 466 U.S. at 687-88).

The Michigan Court of Appeals, in addressing this issue, stated:

> Defendant first argues that he was denied the effective assistance of counsel because defense counsel failed to timely seek suppression of the firearms found in defendant's home during a warrantless search of the home. We disagree. Because defendant failed to raise this issue in a motion for a new trial or evidentiary hearing in the trial court, and this Court denied his motion to remand, our review is limited to errors apparent on the record.
>
> Whether a person has been denied effective assistance of counsel is a mixed question of fact and constitutional law. To establish a claim of ineffective assistance of counsel, a defendant must demonstrate that his counsel's performance fell below an objective standard of reasonableness and that counsel's representation so prejudiced the defendant that it deprived him of a fair trial. A defendant must also overcome the strong presumption that counsel's actions constituted sound trial strategy. With respect to the prejudice requirement, a defendant must demonstrate a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different.
>
> Defendant contends that trial counsel should have timely sought suppression of the firearms recovered at his residence because his elderly grandmother, Annie Killian, was incompetent to consent to the search of the home. It is undisputed that Killian owned the home and, therefore, had authority to consent to its search. Rather, defendant challenges her capacity to consent to the search because she lacked the mental competence. A consent to search permits a search and seizure without a warrant when the consent is unequivocal, specific, and freely and intelligently given. Whether a person's consent is valid depends on the totality of the circumstances. A police officer's determination that consent is valid must be objectively reasonable.

6

> Here, the totality of the circumstances confirms that Killian's consent to search was valid. Sergeant Michael Jackson testified that he explained to Killian the allegations involving defendant and that he was looking for firearms because of the allegations. Killian acknowledged that she understood why he was at her home; she consented to Jackson's searching her home and she signed the consent form. Further, she informed Jackson that there were weapons in the home and that they belonged to defendant. Although Killian's granddaughter wrote the "n" at the end of Killian's signature on the consent form and Killian testified at trial that she did not recall signing her name, she admitted that the signature on the form was hers. Moreover, although she testified that she did not recall the police being at her home and was unable to remember defendant's name at the time of trial, these factors have no bearing on her competency to consent to the search at the time of the search. These facts establish an objectively reasonable basis for believing that Killian's consent to search was valid.

*Holmes*, No. 276591, 2008 WL 5056691, at *2 (citations and quotations omitted).

"Where defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice." *See Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986). Here, Holmes cannot establish that the evidence would have been suppressed or that there is a reasonable probability that the outcome of the trial could have been different even absent the guns found in his home; he cannot show, with a reasonable probability that, had counsel filed a motion to suppress, it would have been granted, and further, even if a motion to suppress had been made and granted, there is not a reasonable probability that the result of his trial would have been different.

In this case, the state court finding that consent was given to the search is supported by the record. Even if Holmes could establish that the proper consent to the search had

7

not been given, the police had probable cause to obtain a warrant based upon the facts that he lived in the home, was identified by the assailant, and returned to the home after the assault. The police had probable cause to reasonably believe that the gun used in the assault was at that location. It is reasonable to conclude that, even had Holmes timely challenged the search, the guns would have inevitably been discovered and admitted at trial.

Against that backdrop, the Court concludes that Holmes has failed to meet his burden. He is therefore not entitled to habeas relief on his ineffective-assistance-of-counsel claim.

### B. Claim II and III–Insufficient Evidence

In his second and third claims, Holmes claims that the prosecutor failed to produce sufficient evidence at trial to support his assault conviction on Officers Jayme Syroid and Dennis Koczera, and that there was insufficient evidence to support his two convictions for felony-firearm.

The Due Process Clause of the 14th Amendment protects an accused in a criminal case against conviction except upon proof beyond a reasonable doubt. *In re WInship*, 397 U.S. 358, 364 (1970). The standard of review for these claims focuses on whether, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). In determining whether the state court reasonably applied that standard, the state court's findings of fact must be afforded a presumption of correctness unless it is established by clear and convincing evidence that the factual determination in the state court was erroneous. 28 U.S.C. § 2254(e)(1); *West*

*v. Seabold*, 73 F.3d 81, 83 (6th Cir. 1996), *cert. denied*, 518 U.S. 1027 (1996). In other words, the reviewing court does not re-weigh the evidence or re-determine the credibility of the witnesses whose demeanor has been observed by the trial court. *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983). It is the province of the factfinder to weigh the probative value of the evidence and resolve any conflicts in testimony. *Neal v. Morris*, 972 F.2d 675, 679 (6th Cir. 1992).

**1. Assault with Intent to Murder conviction**

First, Holmes alleges that there was insufficient evidence produced at trial to support his conviction for the assaults upon Officers Jayme Syroid and Dennis Koczera. A review of the record, however, supports his conviction.

The Michigan Court of Appeals reviewed and rejected Holmes's insufficiency claim regarding his assault conviction, stating:

> Defendant next argues that there was insufficient evidence to support his assault with intent to commit murder convictions involving the two police officers because the doctrine of transferred intent is inapplicable when a completed crime is committed against an intended victim, and the unintended victims do not suffer physical injury. We disagree. When reviewing a claim of insufficient evidence, we must view the evidence in the light most favorable to the prosecution and determine whether a rational trier of fact could find the defendant guilty beyond a reasonable doubt. Whether the doctrine of transferred intent is applies to the two police officers is a question of law that we review de novo.
>
> An assault with intent to commit murder is proved by establishing: (1) an assault, (2) with an actual intent to kill, (3) that would make the killing murder if successful. Further, under the doctrine of transferred intent, it is sufficient for a prosecutor to show that the defendant possessed the requisite intent; the prosecutor need not show that the defendant's intent to kill was directed toward a specific victim. Here, the evidence shows that defendant possessed the requisite intent to kill, so the prosecutor was not required to show that defendant's intent to kill was directed at the police officers in order to support his convictions of assault with intent to commit murder with respect to them.

9

> This conclusion is consistent with *People v Lawton*, 196 Mich App 341; 492 NW2d 810 (1992). In that case, defendant Marcus Lawton was convicted of three counts of assault with intent to commit murder with respect to Truman May, Irene May, and LaTasha May. He argued that the evidence was insufficient to convict him of the counts pertaining to Irene and LaTasha because he did not intend to kill either victim. While outside Truman's home, Lawton fired shots at Truman, who was inside the home. Neither Truman nor Irene was struck, but LaTasha was hit by two bullets that penetrated the walls of the home while she was hiding with Irene in a bedroom closet. This Court upheld Lawton's convictions involving all three victims, notwithstanding that Lawton may have intended to kill only Truman. Significantly for purposes of the instant appeal, this Court upheld Lawton's conviction involving Irene although Irene was not an intended victim and did not suffer injury during the shooting. Similarly, in the instant case, the evidence was sufficient to support defendant's convictions of the two counts of assault with intent to commit murder involving the police officers despite that they were not intended victims and were not injured.

*Holmes*, No. 276591, 2008 WL 5056691, at *3 (citations omitted).

The Michigan Court of Appeals determined that, based on the evidence presented a rational trier of fact could have found that Holmes committed the acts for which he was convicted. His argument hinges on what he describes as the doctrine of transferred intent. Because Holmes reads that doctrine as requiring that an unintended victim suffer actual injury, he argues that, because the two officers suffered no injury, there was insufficient evidence to support his assault conviction. As held by the Michigan Court of Appeals, however, there is no requirement that the prosecutor establish that the intent to kill was directed at a specific person. Here, the facts reveal that Holmes called to the victim who was standing next to two police officers and then shot in the direction of all three. Against that backdrop, Holmes is not entitled to habeas relief on this claim.

### 2. Firearm Convictions

Second, Holmes also claims that insufficient evidence was produced to establish his guilt for felon-in-possession of a firearm and possession of a firearm in the commission of

a felony. Specifically, he claims that the state failed to prove he was in possession of a firearm.

The Michigan Court of Appeals rejected Petitioner's insufficiency claim relating to his firearm convictions and stated:

> Defendant next argues that the evidence was insufficient to support his convictions of felony-firearm with respect to the .44-caliber revolver recovered in his home and the semiautomatic handgun recovered from the trunk of his car. He contends that no evidence showed that he possessed these weapons during the assaults with intent to commit murder or the interference with a police investigation and that the Legislature did not intend felon-in possession to serve as the basis for a felony-firearm conviction. Whether a felon-in-possession conviction may serve as the predicate felony for a felony-firearm conviction is a question of law that this Court reviews de novo.
>
> Defendant correctly argues that no evidence showed that he possessed the .44-caliber revolver or the semi-automatic handgun during the assaults with intent to commit murder or the interference with a police investigation. He was properly convicted of felony-firearm with respect to these weapons, however, because his felon-in-possession convictions regarding these firearms properly served as the bases for his felony-firearm convictions regarding the same weapons.
>
> Defendant argues that *People v. Smith*, 478 Mich. 292; 733 NW2d 351 (2007), rejected the reasoning of *People v. Calloway*, 469 Mich. 448; 671 NW2d 733 (2003), and *People v Dillard*, 246 Mich.App 163; 631 NW2d 755 (2001), which held that the language of the felony-firearm statute, MCL 750.227b, permits convictions of both felony-firearm and felon-in-possession because the felony-firearm statute does not exempt felon-in-possession as a predicate offense. Thus, defendant argues, those decisions are no longer binding. In *Smith*, *supra* at 316, however, our Supreme Court acknowledged that, for purposes of the multiple punishment strand of double jeopardy, "courts first look to determine whether the Legislature expressed a clear intention that multiple punishments be imposed." The Court held that if the Legislature clearly intended to impose multiple punishments, imposition of such punishments does not violate the constitution regardless of whether the offenses share the same elements. Only where the Legislature's intention is not clearly expressed is it necessary to apply the *Blockburger* "same elements" test to determine whether multiple punishments are permissible. Thus, as determined in *Calloway*, *supra* at 451-452, and *Dillard*, *supra* at 166-168, because the plain language of the felony-firearm statute does not

11

exempt felon-in-possession as a predicate felony, the Legislature has clearly conveyed its intent that felon-in-possession may serve as a predicate felony for a felony-firearm offense. Accordingly, it is unnecessary to apply the "same elements" test. Therefore, although our Supreme Court in *Smith* adopted the *Blockburger* "same elements" test, this holding does not undermine the soundness of *Calloway* and *Dillard* to the extent that those decisions focused on the plain text of the felony-firearm statute.

Defendant further argues that the rationale of *Calloway* and *Dillard* should not persuade this Court because neither case addressed the intent of the Legislature that enacted the felony firearm statute in 1976 and because the felon-in-possession statute was not enacted until 1992, making it impossible to have been included in the list of exceptions contained in the felony firearm statute. As recognized in *Dillard*, *supra* at 168, quoting *Walen v Dep't of Corrections*, 443 Mich 240, 248; 505 NW2d 519 (1993), "'the Legislature is presumed to be aware of, and thus to have considered the effect on, all existing statutes when enacting new laws.'" Therefore, "had the Legislature wished to exclude the felon in possession charge as a basis for liability under the felony-firearm statute, the Legislature would have amended the felony-firearm statute to explicitly exclude the possibility of a conviction under the felony-firearm statute that was premised on MCL 750.224f." The Legislature failed to do so. Accordingly, defendant's argument lacks merit.

*Holmes*, No. 276591, 2008 WL 5056691, at *4-5 (citations omitted).

Holmes was identified as the assailant in this case, and the gun used to assault the victim and the police officers was found in his home as well as another weapon being found in the vehicle in which he was seen within minutes of the assault. Under those circumstances, the Court concludes that there was sufficient evidence presented to convict him of the firearm convictions. The Court therefore concludes that the Michigan Court of Appeals's decision is neither contrary to nor an unreasonable application of the Supreme Court precedent established in *Jackson v. Virginia*. Accordingly, Holmes is not entitled to federal-habeas relief based on these claims.

To the extent Holmes claims that his convictions for both possession of a firearm in

the commission of a felony and felon-in-possession of a firearm are precluded under the Double Jeopardy Clause, his claim is without merit.

The Double Jeopardy Clause of the Fifth Amendment provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const. Amend. V. It applies to the States via the Fourteenth Amendment. *See Benton v. Maryland*, 395 U.S. 784, 794 (1969). This Clause affords defendants protection against three basic harms: second prosecution for the same offense after acquittal, second prosecution for the same offense after conviction, and multiple punishments for the same offense. *Brown v. Ohio*, 432 U.S. 161, 165 (1977) (citing *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969) (footnotes omitted)). "Because the substantive power to prescribe crimes and determine punishments is vested with the legislature [], the question under the Double Jeopardy Clause whether punishments are 'multiple' is essentially one of legislative intent, []." *Ohio v. Johnson*, 467 U.S. 493, 499 (1984) (citations omitted). "Where, [], a legislature specifically authorizes cumulative punishment under two statutes, regardless of whether those two statutes proscribe the 'same' conduct [], a court's task of statutory construction is at an end and the prosecutor may seek and the trial court or jury may impose cumulative punishment under such statutes in a single trial." *Missouri v. Hunter*, 459 U.S. 359, 368-69 (1983). In determining whether the Michigan legislature intended to authorize cumulative punishments in the circumstances presented here, the Court "must accept the state court's interpretation of the legislative intent for the imposition of multiple punishments." *Brimmage v. Sumner*, 793 F.2d 1014, 1015 (9th Cir. 1986) (citing *Missouri*, 459 U.S. at 368); *see also White v. Howes*, 586 F.3d 1025 (2009) (holding that cumulative punishments for Michigan convictions for felon in possession of a firearm and possession

of firearm during the commission of a felony did not violate double jeopardy).

The Court finds that the Michigan Court of Appeals correctly analyzed this issue and therefore concludes that Holmes is not entitled to habeas relief to the extent he claims his firearm convictions violate the Double Jeopardy Clause.

### C. Certificate of Appealability

The Court will also decline to issue a certificate of appealability (COA) to Holmes. A court may issue a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a federal district court rejects a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, a district court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the petitioner's claims. *Id.* at 336-37. When a federal district court denies a habeas claim on procedural grounds without addressing the merits, a COA should issue if it is shown that jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling. *See Slack*, 529 U.S. at 484-85.

The Court concludes that jurists of reason would not find its assessment of the substantive rulings debatable or wrong. The Court thus declines to issue Petitioner Holmes

a COA. Nor should he be granted leave to proceed on appeal *in forma pauperis*, as any appeal would be frivolous. *See* Fed.R.App.P. 24(a).

## V. CONCLUSION

For the reasons stated above, this Court concludes that Petitioner Holmes is not entitled to federal habeas relief on the claims presented in his petition.

Accordingly, **IT IS ORDERED** that the "Petition for Writ of Habeas Corpus" is **DENIED WITH PREJUDICE**. (Dkt. # 1.)

**IT IS FURTHER ORDERED** that the Court declines to issue a certificate of appealability and leave to proceed on appeal *in forma pauperis*.


s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated: April 27, 2010

I hereby certify that a copy of the foregoing document was served upon counsel of record on April 27, 2010, by electronic and/or ordinary mail.

s/Carol A. Hemeyer
Case Manager